STATE OF WEST VIRGINIA

*v.*

WILLIAM HOWARD BRANT

(No. 13961)

Decided March 13, 1979.

*Ballard & Brumfield and G. David Brumfield* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Stephen L. Herndon*, Assistant Attorney General, for defendant in error.

NEELY, JUSTICE:

The appellant, William Howard Brant, was convicted of second degree murder in the Circuit Court of McDowell County. The case before us presents a troublesome and extremely rare occurrence because the State, after proving that the accused killed another with a deadly weapon, was not entitled to have the jury instructed that they could return either a first or second degree murder conviction even though the defense offered no evidence of excuse or mitigation. We reverse and award a new trial.

This case is unique and, consequently, our holding is strictly limited to the facts which we shall develop in greater than usual detail. On the afternoon of 11 February 1976, appellant and David Harless, the decedent, began drinking substantial quantities of beer and whiskey with other young men at the Palace Cafe in Iaeger, West Virginia. The drinking continued until approximately 9:00 p.m. when appellant and Mr. Harless took a friend, Douglas Dawson, home. Mr. Dawson testified that he slept until 2:00 a.m. when his wife awakened him to drive a patron at her cafe home. After completing that mission, Mr. Dawson drove by the Iaeger Cafe where he saw appellant, David Harless and Dink Vanover. Apparently, after having taken Mr. Dawson, the witness, home earlier that evening, appellant and David Harless had continued their drinking at the Iaeger Cafe which seemingly, although the evidence is not clear, appellant had recently purchased in contemplation of a future business partnership with David Harless. Mr. Dawson joined them this second time in their drinking endeavors. He testified that the cafe was strewn with garbage, empty bottles and beer cans evidencing heavy consumption of alcoholic beverages, and that appellant and David Harless appeared to be extremely intoxicated. Mr. Vanover left shortly after 3:00 a.m. and when Mr.

Dawson prepared to leave at approximately 5:00 a.m., appellant walked behind the bar, pulled out a gun, said "Okay, David, we are not going to tear any more of this stuff up," and shot David Harless who turned slightly and said, "Willie, shoot again." Appellant fired another shot and David Harless slumped over the pool table dead. After realizing what had happened, appellant and Mr. Dawson drove to Dr. E. K. Whitley's home and convinced the doctor to come to the cafe. After being advised by Dr. Whitley to call the police and a lawyer, appellant left the cafe.

The relationship between appellant, William "Willie" Howard Brant, and the decedent, David Harless is crucial to our disposition of this case; the status of such relationship being gleaned from the testimony of the State's witnesses, Mr. Douglas Dawson and Mrs. Geneva Dawson, his wife. Mr. Dawson testified that he had known both men about five years and considered both men friends although he was closer to David Harless. He testified further that appellant and David Harless were "pretty close friends" who "run around together," went out with women together, drank together, and were, in fact, "always together drinking." Mrs. Dawson, owner and operator of the 52 Club near Iaeger, West Virginia, confirmed her husband's testimony that appellant and David Harless were close friends. She testified that the two men were frequent visitors to her club but that she never saw them get into an argument even when they played practical jokes on each other. According to Mrs. Dawson, neither man ever fought or abused anyone let alone each other and Mr. Dawson testified to the same effect noting especially that he was not aware of any argument on the night of the shooting. In summary, appellant and David Harless were close friends, future business partners, and almost constant social companions who never argued nor showed any signs of outward or inward aggression toward each other or anyone else.

A few additional facts should be noted: The shooting took place suddenly and for no apparent reason. Appel-

lant was shocked by his act, yelling, "No, don't tell me I killed David," and even expressed a desire to kill himself. He began crying while telling Mrs. Dawson about the incident. While proof of accident was not attempted at trial, it should be pointed out that earlier in the evening the two friends had been playing with or "snapping" the gun appellant later fired.

## I

It has long been a rule of this jurisdiction that the giving of an instruction not supported by evidence is prejudicial error, *State v. Ponce,* 124 W.Va. 126, 19 S.E.2d 221 (1942), and, in the case before us, the instructions on first and second degree murder should not have been given because the evidence was insufficient to support a finding of malice which is essential for a conviction of either first or second degree murder.

While in the vast majority of cases malice may be inferred from the intentional use of a deadly weapon, *State v. Toler,* 129 W.Va. 575, 41 S.E.2d 850 (1946), where the State's own evidence demonstrates circumstances affirmatively showing an absence of malice which would make an inference of malice from the use of a deadly weapon improper, a conviction of first or second degree murder cannot be upheld. The inference of malice from the use of a deadly weapon is and will continue to be a viable part of our criminal law. In the case before us, the State was unable to demonstrate any ill will or source of antagonism between appellant and David Harless nor any predisposition toward aggressive behavior on the part of appellant. In fact, the State's own witnesses demonstrated the exact opposite. We can only assume that intoxication so completely impaired appellant's nervous system that he did something which he would not have wished to do, or in any other regard countenanced except for his total incapacitation. In effect, on the record before us, we must conclude that the human machine broke down so completely that no malice could be inferred notwithstanding the use of a deadly weapon.

We do not in any way imply by the holding of this case that we are departing from our traditional rule which denies the legitimacy of intoxication as a defense or mitigating circumstances in a criminal case. That rule is founded on the wise recognition that in most cases voluntary intoxication reduces the individual's inhibitions to anti-social activity making the commission of a criminal act more likely. A rule which permits a defendant to plead that because of his intoxication his capacity to control himself or to form a specific intent was diminished would provide every would-be malefactor with a convenient excuse which would appear sufficiently reasonable to confuse any jury. Heretofore, however, we have permitted intoxication to be considered by the jury to reduce first degree murder to second degree murder because it can negate the element of premeditation and deliberation required for a conviction of first degree murder, *State v. Robinson*, 20 W.Va. 713 (1882), and that rule will continue to apply. Furthermore, it has generally been held that intoxication will serve as a defense to a specific intent crime such as burglary, when it appears that the defendant was so incapacitated that he could not formulate the intent to commit a felony after breaking and entering. *State v. Phillips,* 80 W.Va. 748, 93 S.E. 828 (1917). Total incapacitation is what confronts us in this case. While no evidence of the alcohol content of appellant's blood at the time of the shooting was offered at trial, evidence of David Harless' blood alcohol was presented and we can reasonably infer that, since the two men had been drinking together all night, the levels would be approximately the same. Dr. J. H. Murray, who examined David Harless' body, testified that at the time he withdrew blood from the body approximately five hours after the shooting the alcohol in David Harless' blood was .29% by weight. Given the fact that a blood alcohol content of .10% serves as prima facie evidence of intoxication, *W.Va. Code*, 17C-5A-5(c) (1968), and Dr. Murray's testimony that a blood alcohol content of .38% could cause death, it is not unreasonable to conclude that David Harless and appellant were *totally incapaci-*

*tated.* That is crucial because diminished capacity where there is even a glimmer of intent cannot be sustained as a defense.

What makes the case before us different from almost every other case in which intoxication is raised is that in the case before us there was no evidence of malice apart from the use of a deadly weapon and there was affirmative evidence of absence presented by the State's own witnesses; therefore, the intoxication did not have the effect of reducing the appellant's inhibitions so that preexisting malice or disposition to anti-social conduct could rise to the surface and be acted upon, as is the usual case with intoxication.

So that this case cannot be misconstrued and will be limited to its facts, it should be reiterated that intoxication can never be used as a defense where it is alleged that there was *diminished capacity* except where previous exceptions apply, but can only be used when there is demonstrated a *total* lack of capacity such that the bodily machine completely fails. Furthermore, where a weapon is involved it must affirmatively appear that the defendant had no predisposition to commit the crime or to engage in aggressive anti-social conduct which the voluntary intoxication brought to the forefront.[1]

For the reasons stated above, the judgment of the Circuit Court of McDowell County must be reversed and the case remanded for a new trial consistent with this opinion.[2]

*Reversed and remanded.*

---

[1] Appellant makes various other assignments of error none of which is fairly raised.

[2] A new trial will not subject appellant to unconstitutional double jeopardy since our reversal is based on trial error (erroneous jury instruction) rather than insufficiency of evidence. *Burks v. United States,* 437 U.S. 1 (1978); *State v. Frazier,* ___ W.Va. ___, 252 S.E.2d 39 (1979). On retrial the State cannot attempt proof of malice to justify a conviction of first or second degree murder since that would be unconstitutional double jeopardy; however, sufficient evidence was presented to justify a conviction of either voluntary manslaughter or involuntary manslaughter and retrial on those charges is not improper.