352 S.E.2d 87

**STATE of West Virginia**

v.

**Kenneth G. GALE.**

**No. 16780.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1986.

---

Cheryl C. Mellinger, Asst. Pros. Atty., Parkersburg, for appellee.

J.C. Powell, Hardman & Powell, Parkersburg, for appellant.

PER CURIAM:

This is an appeal by Kenneth E. Gale from an order of the Circuit Court of Wood County sentencing him to ten years in the State penitentiary for aiding and abetting robbery. The defendant contends that the jury's verdict was contrary to the evidence and was not supported by substantial evidence. He claims that the trial judge erred in denying his motion made pursuant to Rule 26.2 of the West Virginia Rules of Criminal Procedure for the production of a written report prepared by a Parkersburg police detective and that the court erred in denying him a copy of the transcript of the trial of William B. Nelson, III, a co-participant in the crime charged. Additionally he argues that the trial court erred in finding that he consented to the search of his motor vehicle, and that the court improperly denied him an opportunity to impeach a rebuttal witness called by the State. After examining the record, we believe that the trial court's procedure with regard to the Rule 26.2 motion was improper. We remand for further development on that point. We also believe that the defendant's other assignments of error are without merit.

On October 11, 1983, a lone robber, Jimmy Rex Parker, using a chrome-plated revolver, robbed Ronald Booth, the manager of a U–Haul Moving Center located in Parkersburg, West Virginia. Shortly after the robbery the defendant in the present proceeding, Kenneth E. Gale, who knew Ronald Booth, drove up to the U–Haul Center with William B. Nelson, III, another party subsequently implicated in the crime. At the time the police were investigating the robbery. Upon seeing the defendant, Mr. Booth, the victim of the crime, indicated that the defendant, with whom he was well acquainted, had a pistol which matched the description of the revolver used by the robber. Upon hearing this, the police, after informing the defendant of his rights, asked him a number of questions. They also searched his car pursuant to a consent to search signed by him. The search revealed the pistol used in the robbery and also a check taken during the robbery. The defendant, Jimmy Rex Parker, and

William B. Nelson, III, were subsequently indicted for the robbery.

During his trial the defendant took the stand and testified that prior to the robbery he was aware that Jimmy Rex Parker and William B. Nelson were planning the crime. He also admitted that he, in certain ways, assisted in the preparations. He, however, explained that Ronald Booth, who was to be the victim of the robbery, was his friend. He said that his reason for participating in the preparations was that he hoped to have an opportunity either to warn Mr. Booth or to protect him from harm.

Specifically the defendant admitted that on the day of the crime he drove William B. Nelson to Jimmy Rex Parker's house, where the robbery plans were discussed. He admitted that he provided the pistol used during the robbery. He admitted that he transported William B. Nelson and Jimmy Rex Parker to a K–Mart, where a mask was purchased for the robbery. He admitted that he transported the parties to the site of the crime. Other evidence indicated that he waited for Parker to return after the crime and that he split the cash proceeds from the robbery with Parker and Nelson. He later spent the money.

To rebut the defendant's assertion that he participated in the crime only to warn or to protect Mr. Booth, the State called as a witness Debra Barnette, also known as Debra Lambert. Ms. Barnette was present at Jimmy Rex Parker's house at the time plans were made for the robbery. Her testimony indicated that the defendant was a planner and instigator of the crime.

One of the defendant's assignments of error on appeal is that the trial court erred in denying his motion, made pursuant to Rule 26.2 of the West Virginia Rules of Criminal Procedure, for the production of a written report prepared by Parkersburg Detective Delbert Gregg.

A principal witness for the State during the defendant's trial was Detective Delbert Gregg, who investigated the crime and who participated in the search of the defendant's car. At the beginning of cross-examination of Detective Gregg the defen-

dant moved to inspect Detective Gregg's investigation report. Detective Gregg had not used the report to refresh his recollection or for any other purpose during his testimony at the trial. The trial court concluded that the report was not a statement within the purview of Rule 26.2 and denied the defendant's motion for production. On appeal the defendant contends that the trial court's ruling was erroneous.

Rule 26.2 of the West Virginia Rules of Criminal Procedure is patterned after Rule 26.2 of the Federal Rules of Criminal Procedures and the Jencks Act from which the Federal rule has evolved. In applying the West Virginia rule the Court has looked to Federal precedents for guidance. *State v. Tanner*, 175 W.Va. 264, 332 S.E.2d 277 (1985); *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984). The requirement of the Rule is set forth in syllabus point 1 of *State v. Tanner, supra:*

"After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the State or the defendant and his attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession that relates to the subject matter concerning which the witness has testified." Rule 26.2, West Virginia Rules of Criminal Procedure.

In *State v. Watson, supra,* the Court indicated that when a motion for disclosure under Rule 26.2 has been made, after a witness has testified, it is incumbent upon the trial court to ascertain first if a "statement" within the meaning of the rule exists, and next to determine whether it is in the possession of the party. Then the court must determine whether it relates to the subject matter concerning which the witness has testified. In *Watson* the Court recognized that these inquiries often involve disputed facts and that if the evidence is sufficient to suggest that a statement subject to discovery exists, the Court should require the production of the writing for examination. The Court specifical-

ly quoted with approval the following language from 2 C. Wright, *Federal Practice & Procedure* (1982):

> There may be dispute about whether a writing exists, or whether it is a "statement" within the definition of the rule, or whether it relates to the subject matter concerning which the witness has testified. The court must resolve the dispute. It cannot simply accept the assurance of the attorney who has called the witness that he has disclosed to the other party everything that is within the scope of the rule.
>
> If there is sufficient foundation for believing that there may be a statement that ought to be produced in whole or in part, the court is required to order that the statement be delivered to the court in camera. The court is also to decide for itself what other evidence it needs to hear bearing on the issue.

2 C. Wright, *supra*, § 438 at 603–04; *see State v. Watson, supra*, 173 W.Va. at 560–61, 318 S.E.2d at 611.

Rule 26.2 defines a statement as being a written statement made by the witness signed or otherwise adopted or approved by him, as a verbatim transcription of a statement made by the witness recorded contemporaneously with the giving of the statement, and as a recorded or transcribed statement made by a witness to a grand jury. With regard to investigation notes and reports prepared by government agents who testify as witnesses, 8A J. Moore, *Federal Practice* ¶ 26.2.02[2][b] (2d ed. 1986) states:

> Although the government's rough notes or preliminary reports on its witness' prior assertions are not producible statements, formal or final reports of government agents who testify as witnesses for the prosecution are producible under the [Jencks] Act and Rule 26.2.

This assertion is supported by a number of Federal cases. *United States v. McCarthy*, 301 F.2d 796 (3rd Cir.1962); *United States v. Sink*, 586 F.2d 1041 (5th Cir. 1978); *United States v. Cleveland*, 477 F.2d 310 (7th Cir.1973).

In the case presently under consideration, Detective Gregg's report was not introduced into evidence and is not presently available to the Court for inspection. That Detective Gregg testified and that he did prepare some sort of notes or report is apparent from the record. The evidence is sufficiently substantial to suggest that the report might have been a formal or final report. This Court believes that when such a report exists, Rule 26.2, and the cases decided under it, dictate that the trial court should order its production and that the trial court should examine it to determine whether it is in fact a statement producible to the opposing party. That was not done in the case presently under consideration.

In *State v. Watson, supra*, this Court recognized that the refusal of the circuit court to order production proper under Rule 26.2 is error. However, the Court also recognized that failure to allow inspection does not always constitute reversible error. The question of whether the error is harmless or prejudicial hinges upon whether there is a substantial discrepancy between the report and the witness' trial testimony. In *State v. Tanner, supra*, the Court held that where a trial court failed to require the production of a properly producible statement under Rule 26.2 it was appropriate to remand the case with directions that the trial court require the production of the statement and determine whether it was a statement covered by the rule. If it was, it is incumbent upon the trial court to make a determination of whether the statement varied from the testimony adduced during trial and whether the defendant was prejudiced by the nonproduction.

Although it is not clear in the present case whether the production of Detective Gregg's report to the defense is actually required, that is, whether it is a "statement" within the meaning of Rule 26.2, sufficient evidence was introduced that the trial court should have ordered production of the report to the court and the trial judge should have examined it *in camera* to determine whether it was producible to the defense. Since that was not done, the Court believes that this case should be remanded for determination of whether the

defendant was prejudiced by non-production. That determination must be based on an examination of the actual report.

■ We find that the defendant's other assignments of error are without merit. He argues that the verdict was contrary to the weight of the evidence and was not supported by the evidence. However, a careful examination of the record reveals that his own testimony implicated him in the commission of the crime. While he attempted to exculpate himself by indicating that he was involved solely for the purpose of protecting the victim of the crime, the question of whether this was actually his motivation was one which hinged substantially upon his credibility as a witness.

In syllabus point 1 of *State v. Woods*, 155 W.Va. 344, 184 S.E.2d 130 (1971), the Court stated:

"The jury is the trier of facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Pt. 2, syllabus, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967).

In the present case, the jury apparently disbelieved the defendant's testimony relating to his motivation. The remaining evidence was sufficient to support their verdict.

■ The defendant also argues that the trial court erred in denying his motion for a copy of the transcript of the trial of William B. Nelson, III. On March 7, 1984, the defendant moved that he be provided with a copy of the transcript of the trial of Nelson, an individual charged as the co-participant in the crime. On March 12, 1984, the trial court determined that the transcript had not yet been prepared, since Nelson's trial had occurred only during the prior week. The trial in the defendant's case was scheduled for March 27, 1984, two weeks after the hearing. The trial judge proposed giving the defendant the transcript of the testimony of all witnesses at Nelson's trial whose testimony might be of importance to the defendant. The trial judge concluded that the testimony of six witnesses was significant. He asked the prosecutor and defense counsel whether they believed that the testimony of any of the other witnesses would be essential. The State indicated that the defendant should have the testimony of Jimmy Rex Parker, the actual perpetrator of the crime. The court readily agreed. Defense counsel said that the testimony of certain police officers might be important. The court noted that those police officers arrived after the crime and indicated that the only officer who gave any substantial testimony relating to the defendant's conduct was Delbert Gregg. The judge had already ordered that Gregg's testimony be produced. Defense counsel did not object to the trial court's ruling.

This Court has repeatedly recognized that ordinarily it will not consider matters on appeal to which no objection was made at trial. *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979); *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978); *cf. State v. Pietranton*, 137 W.Va. 477, 72 S.E.2d 617 (1952). Even without this rule, the facts of the instant case fail to show that the defendant was prejudiced by the trial court's ruling on the Nelson transcript.

■ The defendant next argues that the trial court was plainly wrong in finding that he had voluntarily consented to the search of his motor vehicle and in finding that the items seized as a result of the search were admissible into evidence.

At the pretrial hearing on the admission of the items seized as a result of the search, Detective Delbert Gregg testified that prior to asking the defendant any questions and prior to conducting a search of the vehicle, he read the defendant a statement of his "Miranda" rights from a "Miranda" card. The defendant stated that he understood his rights and was willing to be questioned in the absence of an attorney, according to Detective Gregg's testimony. Also, a statement of rights relating to a consent to search on the reverse of the card was read to the defendant. The defendant, after hearing his rights, consented to a search and signed a consent

form. The defendant did not at any time request that the search be stopped, and, in fact, showed Detective Gregg where the pistol used in the robbery was located.

At the hearing the defendant himself testified that he had requested a lawyer at the time he was informed of his rights. He argues that since he requested a lawyer the subsequent search was improper and that the items seized as a result of the search were inadmissible into evidence.

The rule in this State is that a trial court's ruling on the voluntariness of a consent to search will not be disturbed unless it is plainly wrong or against the weight of the evidence. *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982). In the case presently under consideration, the evidence on the voluntariness of the defendant's consent to search was plainly contradictory. Given the nature of the evidence, the Court cannot say that the trial court's ruling was improper.

■ The defendant lastly claims that the trial court erred in denying him an opportunity to impeach the State's rebuttal witness, Debra Barnette, also known as Debra Lambert, on a prior felony convict of welfare fraud.

Witness Barnette was a critical rebuttal witness to the State who challenged the defendant's assertion that his participation in the crime was motivated by a desire to warn and/or protect Ronald Booth, the manager of the U–Haul Center. Ms. Barnette, under the name Debra Lambert, had previously been convicted of welfare fraud. The trial court refused to allow defense counsel to adduce the fact of the conviction. The defendant argues, in effect, that he was precluded from impeaching a critical witness for the State.

Ms. Barnette's conviction was reversed by this Court on appeal in *State v. Lambert,* 173 W.Va. 60, 312 S.E.2d 31 (1984). The decision in that case was handed down on January 26, 1984. As previously stated, the defendant's trial began on March 27, 1984. At the time of the trial, Ms. Lambert's conviction had been set aside and reversed. The Court believes that this fact precluded its use for impeachment purposes and that the trial court did not err in refusing to permit its use. As has been noted by a commentator:

> It is significantly pointed out that if the conviction in issue has itself been the subject of appeal or prior judicial scrutiny, i.e., writ of *habeas corpus,* and as a result thereof has been set aside or reversed, the conviction cannot be used for any purpose. This is so because once a conviction is set aside there is simply no conviction.

F. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4.2(E)(c) (2d ed. 1986); *see also Nicholson v. State,* 254 So.2d 881 (Miss.1971).

As previously stated, the Court believes that because the trial court failed to examine Detective Gregg's investigation report to determine whether it was producible under Rule 26.2 of the Rules of Criminal Procedure, this case should be remanded to the circuit court. Upon remand the trial judge should require the State to produce the report for the court's inspection. When the report is produced, the trial judge should inspect it to determine if it is a "statement" covered by the rule and if there is a substantial and material variance between it and the testimony given by Detective Gregg at trial. If there is a substantial and material variance between its contents and the testimony given by Detective Gregg at the defendant's trial, and if the variance was prejudicial to the defendant, the court should, in accordance with the procedure outlined in *State v. Tanner, supra,* afford the defendant a new trial unless it finds the errors to be harmless. If there is no such variance, the judge should affirm the defendant's sentence.[1]

---

1. The procedure on remand parallels the procedure we have developed for remand when the trial court has failed to conduct a mandatory preliminary hearing in regard to evidentiary matters. In such a situation the trial court is required on the remand to conduct such hearing to determine whether there has been reversible error initially committed with regard to the evidentiary issue. If the court determines that there has, the defendant should be afforded a new trial. If it finds no reversible error, the conviction should be affirmed. *Cf. State v.*

In either case, the relevant parts of the report should be made a part of the record, as should the transcript of any hearing that is held.

For the reasons stated, this case is remanded for further development in accordance with this opinion.

Remanded.

*Walls,* 170 W.Va. 419, 294 S.E.2d 272 (1982); *State v. Harris,* 169 W.Va. 150, 286 S.E.2d 251 (1982); *State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914 (1981); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980); *State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438 (1980); *State v. Brewster,* 164 W.Va. 173, 261 S.E.2d 77 (1979).