401 S.E.2d 237

**STATE of West Virginia**

v.

**Johnny MILLER.**

**No. 19490.**

Supreme Court of Appeals of
West Virginia.

Dec. 20, 1990.

W.A. Thornhill, III, Beckley, for Johnny Miller.

Kristen Keller, Chief Deputy Pros. Atty., Beckley, for State of W.Va.

PER CURIAM:

This case is before the Court upon the appeal of Johnny Miller from a November 14, 1989 final order of the Circuit Court of Raleigh County where the appellant was sentenced to life imprisonment without mercy based upon an August 4, 1989 jury

verdict. The appellant was found guilty of the first degree murder of his girlfriend Lorelei Reed and no recommendation of mercy was made by the jury. The appellant contends that the following errors were committed by the trial court:

1. The trial court erred in permitting prejudicial evidence tending to prove the defendant was a drug dealer.

2. A. The trial court erred in giving an incomplete or misapplied *Brant* instruction on intoxication.

B. The trial court erred in improperly instructing the jury on the defense of an accidental killing, namely, by imposing the wrong burden of proof in the defendant in this regard.

C. The trial court erred in giving Instruction No. 6 on malice, that instruction having no proper application to the facts in the present case.

D. The trial court improperly gave the instruction on self-defense, improperly permitting the State to have an instruction on a defense not asserted by the defendant.

3. The trial court erred in refusing Defendant's Instructions Nos. 2 and 3.

4. The trial court erred in refusing to compel the State to produce the police officers' reports or statements.

5. The trial court erred in denying the defendant his right to exercise peremptory challenges after the State.

Upon review of the arguments of the parties and all the matters of record submitted before the Court, we remand the decision of the trial court in part, and affirm the decision in part.

The evidence introduced by the state at trial revealed that on October 25, 1988, the victim, Lorelei Reed, was shot and killed when a bullet from a .44 magnum, owned by the appellant, entered her body at the back of her neck at close range. Testimony from the sheriff's deputy indicated that when he arrived at the crime scene, the victim was sitting in a living room chair in "perfect posture" in the trailer where she resided with the appellant. The deputy also testified that fistfuls of hair lined the path from the front door of the trailer to the chair where the victim was located. The hair was identified by a Criminal Investigations Bureau serologist at trial as being consistent with the victim's hair, but not the appellant's hair. The appellant confessed to the shooting prior to trial.

The evidence at trial further indicated that prior to the shooting, both the victim and the appellant were involved in a rather turbulent relationship. This was reflected through the testimony of the victim's seven-year old son from a previous marriage who stated that during his visits with his mother, he witnessed the appellant pull the phone out of the wall, that the appellant had chased his mother throughout the house, and on one occasion the appellant had attempted to strangle his mother.

Additionally, the victim's mother testified that on one occasion during the summer prior to the shooting, the victim had told her, while crying and visibly upset that "Mommy, I'm just tired of fighting him; I can't take it anymore." There was also the testimony from one of the victim's friends, who had previously witnessed an incident in which the appellant had fired his gun while the victim was trying to gather some of her infant child's belongings from the trailer.

Finally, a state police dispatcher who was related to Reed testified that one month prior to the murder, the victim had telephoned the state police detachment attempting to gather information about "what she could do ... [a]bout him (the appellant) ... beating her up." Reed later went to the detachment where, according to the dispatcher's testimony, she was observed as having a bruised face and stated that she was scared of the appellant and that he would kill her if she obtained a warrant against him.

The evidence at trial also revealed that the appellant was allegedly involved in drug dealing and that the victim was going to turn him in to the authorities for this. Specifically, Deputy Bailey's testimony described a phone call that he had received from the victim in which she wanted to turn the appellant in for dealing drugs. Deputy Bailey testified that the victim told

him that her boyfriend, the appellant, was dealing and using drugs. The deputy advised her that before he could take action, she would have to come in and file a formal complaint against the person. The victim then informed the deputy that she would come in the following day to initiate proceedings; however, she failed to appear.

The victim's sister, Debra Dunkley, testified that the victim told her that "if she reported Johnny ... she would have to leave the state, because he would find her and he would kill her...." Dunkley also testified that in a later conversation with her sister which occurred shortly before her sister's death, that her sister had indicated to her that she had reported the appellant to the authorities, telling them that she could be reached at Dunkley's home, "[a]nd that if they called me, would I tell them that she did not want to press charges. She didn't want to get Johnny into trouble now." Dunkley further testified that the appellant expressed knowledge that his girlfriend has reported him to the authorities when approximately two weeks prior to the shooting, the appellant in a conversation with her stated "there had been a government man up there looking for him, and that he was afraid that (Lorelei) had called somebody on him...."

Additional testimony from friends of the victim indicated that she had reported the appellant to the authorities and that she had asked them to deny any illegal drug activity by the appellant if the authorities contacted them about the report. Finally, Audrey Meadows, a friend of both the appellant and the victim, testified that on the evening of the victim's death the appellant began questioning the victim about why a door to the trailer was left open. The appellant apparently stated to the victim "Lori, why are you doing this? Why do you have this door open? Are you setting me up?" At this point the appellant reportedly grabbed the victim and pushed her, according to the witness' testimony.

The appellant at trial claimed that he was intoxicated at the time of the shooting and that the shooting was accidental. In support of his defense, the appellant relied upon a statement given to police prior to trial in which he stated that earlier on the day of the shooting, the appellant and the victim had undergone blood tests as a prerequisite to obtaining a marriage license. (A copy of the results of the blood work dated October 21, 1988, was also submitted in evidence.) The appellant's statement further revealed that there was a struggle between him and the victim and that he was uncertain of who actually pulled the trigger. Further evidence was introduced on behalf of the appellant which attempted to establish that the appellant was not always the instigator or the abusive one in the couple's altercations.

Throughout the appellant's cross-examination of the state's witnesses who observed the appellant at or near the time of the shooting, the appellant's attorney attempted to establish that the appellant was intoxicated when the shooting occurred. While several witnesses' testimony indicated that he had been drinking and smoking marijuana, no one, including the appellant in his statement, believed that he was totally intoxicated. The appellant introduced evidence through the medical examiner that the victim's blood alcohol level was .187 at the time of autopsy, the inference being that this would be indicative of the appellant's blood alcohol level since the evidence was that they had been drinking together prior to the incident. The sheriff, however, testified that the appellant did not appear to be "incoherent or out of control" when he arrived at the crime scene and, therefore, no field sobriety test or breathalyzer test was administered. Following a presentation of all the evidence in the case, the jury was instructed and subsequently returned a verdict finding the appellant guilty of first degree murder without a recommendation of mercy.

I.

The first assignment of error is the assertion by the appellant that the trial court erred in refusing to compel the state to produce the reports of two police officers. The two reports at issue here involve one made by Sheriff Deputy Ray Bailey and

one made by Sheriff Deputy William Booth, both members of the Raleigh County Sheriff's Department. Each officer took part in the investigation of the present case and each officer testified regarding their respective investigative findings. The request for Deputy Bailey's report came at an in camera hearing on appellant's motion in limine seeking to prohibit any evidence of the victim turning the appellant in for drug dealing from being introduced at trial.[1] That hearing occurred just prior to jury selection on the day the trial began, and the request was not renewed at the conclusion of the officer's direct testimony for the state during trial. The request for Deputy Booth's report, however, was made at the conclusion of his direct testimony for the state during trial. The appellant contends, as to both reports, that he was entitled to the reports pursuant to West Virginia Rule Criminal Procedure 26.2. The state asserts that the appellant was not entitled to the officers' reports because neither witness relied upon their respective reports while testifying and neither report was the final report of either officer as specified in *State v. Gale*, 177 W.Va. 337, 352 S.E.2d 87 (1986). The state further argues that both of these reports fell within the non-disclosure provision of West Virginia Rule Criminal Procedure 16(a)(2). Finally, the state argues that this assignment of error was waived by the appellant as a motion for production of the final report was never made by the appellant at trial as to either of the officers' reports.[2]

■ First, an examination of the rules and case law governing the issue of the defendant's access to police reports is helpful. West Virginia Rule of Criminal Procedure 16(a)(2) provides, in pertinent part, that

this rule does not authorize the discovery or inspection of reports, memoranda or other internal official documents made by the attorney for the state or other state officials in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses *except as provided in Rule 26.2.* (emphasis added)

Additionally, W.Va.R.Crim.P. 26.2(a) provides, in relevant part, that

[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession that relates to the subject matter concerning which the witness has testified.

*Accord* Syllabus, *Gale*, 177 W.Va. at 338, 352 S.E.2d at 88; Syl. Pt. 1, *State v. Tanner*, 175 W.Va. 264, 332 S.E.2d 277 (1985).

Furthermore, in *Gale* we held that " 'formal or final reports of government agents who testify as witnesses for the prosecution are producible under ... Rule 26.2' " 177 W.Va. at 340, 352 S.E.2d at 90 (quoting 8A J. Moore, *Federal Practice* ¶ 26.-2.02[2][b] (2d ed.1986)). This Court in *Gale* further required the trial court, after a motion for production under West Virginia Rule Criminal Procedure 26.2(a) has been made, to ascertain "first if a 'statement' within the meaning of the rule exists, and next to determine whether it is in the possession of the party. Then the court must determine whether it relates to the subject matter concerning which the witness has testified." 177 W.Va. at 339, 352 S.E.2d at

---

1. We recognize that appellant's request for Deputy Bailey's report came before the officer testified on behalf of the state during trial. Further, we have held that "under the literal reading of the rule, defense counsel could not technically have made the request until the witness had testified [during trial]." *State v. Watson,* 173 W.Va. 553, 560, 318 S.E.2d 603, 610 (1984). Since the report was produced, we deal with the application of W.Va.R.Crim.P. 26.2(a) especially

due to the fact that in *Watson* we encouraged the early disclosure of statements under W.Va. R.Crim.P. 26.2(a) so as to promote a more orderly trial. *See* 173 W.Va. at 560, 318 S.E.2d at 610.

2. We find this final claim made by the state to be meritless. It is evident that the appellant was requesting the final reports of both officers from our review of the record in this case.

90 (citing *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984)).

Appellant's first motion for production[3] was made for Deputy Bailey's report. During cross-examination of Bailey, the appellant's attorney asked the officer whether he had, after the shooting, written a reconstruction of what had happened which contained the contents of a telephone conversation he had with the victim shortly prior to her demise. The officer testified that such a reconstruction would have been a part of his grand jury report to the prosecutor.[4] He further testified that he routinely made a grand jury report to the prosecutor and that this was his "usual report that ... [he made] out in every case that every officer does...." Thus, it appears from the record that this may have been his formal or final report.

The court then ordered the prosecutor to produce the grand jury report made by the officer. The court instructed the officer to examine the report to determine if notes concerning the conversation with the victim were included therein. After making such examination, the officer indicated that the report did not contain information on the matter sought by the appellant's attorney. At this point, no further request was made for Deputy Bailey's report.[5]

While it appears from the record that the report was not examined by the court, but only by the witness under the court's direction, the better practice is for the lower court to conduct an in camera review of any report sought pursuant to W.Va.R. Crim.P. 26.2(a). As we stated in *Gale*, the proper procedure to be followed by the lower court is as follows:

'There may be dispute about whether a writing exists, or whether it is a "statement" within the definition of the rule, or whether it relates to the subject matter concerning which the witness has testified. The court must resolve the dispute. It cannot simply accept the assurance of the attorney who has called the witness that he has disclosed to the other party everything that is within the scope of the rule.

If there is sufficient foundation for believing that there may be a statement that ought to be produced in whole or in part, the court is required to order that the statement be delivered to the court in camera. The court is also to decide for itself what other evidence it needs to hear bearing on the issue.'

177 W.Va. at 340, 352 S.E.2d at 90 (quoting 2 C. Wright, *Federal Practice & Procedure*, § 438 at 603–04 (1982)).

In contrast, the appellant's motion for production of Deputy Booth's statement presents a somewhat different situation. Following the direct examination of the deputy by the prosecuting attorney, the following exchange occurred:

(By the defendant's attorney, Mr. Thornhill):

Q. Sheriff, did you, as the first officer there that evening at the scene, end up making a written report of what you had seen and done and so on?

A: Yes, sir.

Q: Do you have the report?

A: No, sir.

Mr. Thornhill: May I have it?

Ms. Keller: Your, Honor, I believe that, under the Rules, he first has to inquire if the officer used that report to refresh his

---

**3.** It appears from a review of the record in this case, that the report was sought by the appellant solely to ascertain anything therein concerning the contents of the telephone conversation which occurred between the deputy and the victim. This is further evidenced by the appellant's failure to request a copy of the officer's report at trial after his direct examination by the state.

**4.** Even though the officer did acknowledge testifying before the grand jury relating to the phone conversation, the appellant never requested the

grand jury testimony at the in camera hearing or at trial. As this Court has previously held in regard to W.Va.R.Crim.P. 26.2 "[t]he rule is not automatically triggered as the party *must* make a motion for production." *Watson*, 173 W.Va. at 560, 318 S.E.2d at 610 (emphasis added) (court held transcription of statement made by witness to grand jury is statement for purposes of W.Va.R.Crim.P. 26.2).

**5.** A copy of the report was not included in the record submitted to this Court.

recollection for the purposes of testifying.

At this point, a discussion took place out of the presence of the jury after which the trial court found that W.Va.R.Crim.P. 26.2 did not apply to reports which were the work product of the investigating officer. The court then refused the defense counsel's request to make the report a part of the record for the purposes of appeal.[6]

First and foremost, it appears quite clear that it is unnecessary under the rules for the witness from whom a motion for production pursuant to W.Va.R.Crim.P. 26.2 has been made, to have either used the statement to refresh his memory or to have used the statement for any other reasons during his testimony at trial. *See Gale,* 177 W.Va. at 340, 352 S.E.2d at 90. Second, an officer's formal or final report is producible after testifying for the prosecution under W.Va.R.Crim.P. 26.2(a). *Gale,* 177 W.Va. at 340, 352 S.E.2d at 90. Third, the report need not be in the actual physical possession of the witness testifying but need only be accessible to the prosecuting attorney. *Watson,* 173 W.Va. at 559, 318 S.E.2d at 609.

Consequently, it is evident that without further inquiry, the trial court erred in ruling that the report requested at trial was not a statement producible under W.Va.R.Crim.P. 26.2. The failure to allow such inspection, however, does not always constitute reversible error. "The question of whether the error is harmless or prejudicial hinges upon whether there is a substantial discrepancy between the report and the witness' trial testimony." *Gale,* 177 W.Va. at 340, 352 S.E.2d at 91. Since the report was not included in the record sent to this Court, it is impossible to determine whether reversible error has occurred.

We have previously determined that the appropriate course of action for dealing with the possible improper denial of a formal or final report requested is to remand the case to the lower court. *See Gale,* 177 W.Va. at 340, 352 S.E.2d at 91; *Tanner,* 175 W.Va. at 265–266, 332 S.E.2d at 279. Upon remand it is incumbent upon the trial court first to determine, upon ordering the report to be produced, whether the deputy's report was his formal or final report, and therefore a statement under the rule. Next, the trial court must determine whether its failure to allow inspection of the report at trial constituted reversible error under the rule set forth herein and in *Gale.*

## II.

The appellant's next assignment of error concerns the court's ruling which allowed the state to introduce evidence that the victim had turned the appellant into the authorities for drug dealing and drug use in order to prove a motive for the crime The appellant contends that the evidence was extremely prejudicial and that even though the state contended that the evidence was essential for proving motive, there was no evidence which demonstrated

---

6. The trial court later indicated that at the end of the trial he would allow Deputy Booth's report to be made a part of the record. However, at the close of redirect examination of Booth the following dialogue ensued:

Mr. Thornhill: I would like the report, and if necessary, to seal it under court order.
The Court: Let me ask him (Booth) some questions....
. . . .
The Court: This report Mr. Thornhill asked you about, do I understand you have one or it's a part of the whole police report?
The Witness: It's the whole report, sir. I have to do that. We have to write a report.
The Court: But do you have your report, do you have a copy of that or is it just in the main report?
The Witness: It's all the main report.

. . . .
The Court: ... When an officer does something, he may write it down but he turns it over to the main man, which in this case I assume was Mr. Bailey, and then he incorporates everything into the police report. So that's why I asked him if he kept a copy of it. I didn't think he did, but I didn't know that.
Mr. Thornhill: You (Booth) don't have that report?
The Witness: No I didn't keep a copy.
Following this exchange, it becomes evident that the trial court did not include a copy of the report in the record for the purposes of review upon appeal. The record fails to make clear whether it was ever determined if there actually was a report and, if so, whether it was accessible to the prosecuting attorney. Nor is it clear whether the report was a final one as described in *Gale. See* 177 W.Va. at 340, 352 S.E.2d at 90.

that the appellant knew about his girlfriend's actions. The state, on the other hand, argues that the evidence was properly allowed to prove motive under W.Va.R. Evid. 404(b).

■ West Virginia Rule of Evidence 404(b) specifically provides that:

*Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Accord* Syl. Pt. 1, *State v. Edward Charles L., Sr.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

■ While the rule precludes the admission of prior bad acts solely to show that the defendant's conduct is in conformity with those past bad acts, it certainly allows for the admission of prior bad acts for non-character uses such as proof of motive.

We have previously upheld the admissibility of prior bad acts to show the motive for the commission of a crime in the case of *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988). In the *Johnson* case, the state was permitted to introduce evidence not only of the defendant's drug usage but evidence that the defendant tended to purchase drugs with stolen money. *Id.* 179 W.Va. at 622–24, 371 S.E.2d at 343–45. The reason the trial court allowed such evidence to be admitted was that it provided a motive for the defendant's participation in the robbery for which he was on trial. *Id.* 179 W.Va. at 622, 371 S.E.2d at 343.

In upholding the trial court's decision, we found that the court had abided by the guidelines enunciated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986), *overruled in part on other grounds, State v. Charles Edward L., Sr.*, 183 W.Va. 641, 398 S.E.2d 123 (1990) which included holding an in camera hearing to determine the probative value of introducing such evidence versus the prejudicial effect. Syl. Pt. 3, *Dolin*, 176 W.Va. at 690, 347 S.E.2d at 210. Moreover, in particular regard to the motive exception found in W.Va. R.Evid. 404(b) we stated that:

" 'Motive has been defined as "supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent." Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act. Evidence of another crime has been admitted to show the likelihood of defendant having committed the charged crime because he needed money, sex, goods to sell, was filled with hostility, sought to conceal a previous crime, or to escape after its commission, or to silence a potential witness.' "

*Johnson*, 179 W.Va. at 627, 371 S.E.2d at 348 (quoting *Dolin*, 176 W.Va. at 697, 347 S.E.2d at 217).

In our analysis of the present facts, it is clear that the trial court did hold an in camera hearing prior to the admission of evidence concerning the prior acts. Furthermore, the probative value of the evidence was significant in that the victim reporting the appellant to law enforcement officials for his drug dealing clearly demonstrated a motive for her murder. Additionally, the state offered evidence which tended to prove that the appellant knew his girlfriend had reported him to authorities. Thus, the probative value far outweighed any prejudicial effect on the jury, especially since the jury was instructed that such evidence could be considered solely for the purpose of determining whether the defendant had a motive for committing the crime. Consequently, we find no error was committed by the trial court regarding the introduction of this evidence.

### III.

■ The appellant also assigns as error certain instructions given to the jury over the appellant's objection. Specifically, the appellant contends that state's instructions numbered 5, 6, 7 and 9 should not have been given. First, the appellant alleges that the state's instruction number 7, re-

garding the intoxication defense,[7] which stated that such a defense could not be used unless there was a total lack of capacity, was erroneous as a matter of law. The state, however, argues that state's instruction no. 7, together with defendant's instruction number 11,[8] correctly instructed the jury that voluntary intoxication is not a defense to murder, but that if intoxication negated the appellant's capacity to deliberate or premeditate, he could be convicted of no more than second degree murder.

While we have previously held that " '[i]nstructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given[,]' " in this case even though the appellant argues that the two instructions given on the defense of intoxication are in conflict, we disagree. Syl. Pt. 2, *State v. Saunders*, 175 W.Va. 16, 330 S.E.2d 674 (1985) (quoting Syl. Pt. 3, *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978)).

It is clear that both instructions were correct statements of law. We would caution, however, that the law enunciated in *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979) was "strictly limited to the facts" of that case. *Id.*, 162 W.Va. at 763, 252 S.E.2d at 902. In *Brant* the Court was faced with a unique set of facts which revealed a total absence of malice on the

part of the defendant when he shot and killed a close friend. 162 W.Va. at 767, 252 S.E.2d at 903. Moreover, the evidence in that case demonstrated appellant's *total* lack of capacity due to the consumption of alcohol. *Id.*

Consequently, although we find no error was committed by the trial court when it gave the *Brant* instruction, the law announced by the Court in *Brant* is such that courts should normally give this type instruction only when faced with facts similar to the facts in that decision. The preferable instruction which should be given when the mitigating condition of intoxication is present, was found in defendant's instruction 11. *See* Syl. Pt. 2, *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980).

■ The second alleged instructional error pertains to state's instruction number 5[9] concerning the defense of accidental death. The appellant argues that this instruction improperly placed a burden of proving the defense of accidental death on the defendant. The state, on the other hand, contends the instruction was proper and the this Court has upheld such an instruction in *State v. Daniel*, 182 W.Va. 643, 391 S.E.2d 90 (1990).

---

**7.** State's instruction number 7 states the intoxication defense as set out in *State v. Brant*, 162 W.Va. 762, 766–67, 252 S.E.2d 901, 903–04 (1979):

> The Court instructs the jury that it is no defense to a criminal act that the defendant's intoxication or use of drugs reduced his or her inhibitions, making the commission of a criminal act more likely. Further, a defendant's claim of intoxication or drug use can never be used as a defense when the defendant claims that his or her capacity to control his or her actions were *diminished,* but can only be used when there is demonstrated a *total* lack of capacity so that the defendant's bodily machine completely failed. Furthermore, for intoxication to be used as a defense where a weapon is used, it must affirmatively appear that the defendant had no predisposition to commit the crime or to engage in aggressive anti-social conduct which the intoxication merely brought to the forefront. (emphasis in original)

**8.** The defendant's instruction number 11 given to the jury concerning the intoxication defense stated the law according to *State v. Keeton,* 166

W.Va. 77, 272 S.E.2d 817 (1980) and. was as follows:

> The Court instructs the jury that if you believe from the evidence that Johnny Miller killed Lorelei Reed as charged in the indictment, and at the time of such killing Johnny Miller was under the influence of alcohol voluntarily taken by him, then such intoxication is in law no excuse for the act done by Johnny Miller unless you believe from the evidence that such intoxication was such as did, in fact, deprive him at the time of the killing of the element of premeditation, in which event you can find Johnny Miller guilty of no greater offense than murder in the second degree.

**9.** State's instruction number 5 states:

> The Court instructs the jury that where a defendant relies upon a claim of accidental killing as his defense to murder you may only consider that claim of accidental killing in your deliberations if you are convinced there is evidence demonstrating such defense to an appreciable degree. If no such evidence has been presented, then you should find that the killing of Lorilei Reed was not accidental.

We addressed this very same issue in the *Daniel* case where the state offered an instruction which was substantially the same as the one offered in the present case. 182 W.Va. at 651, 391 S.E.2d at 98. In *Daniel* we found that the defense of accidental killing, much like self-defense is an affirmative defense asserted by the defendant. *Id.* at 99. Then, following prior decisions of the United States Supreme Court [10] which essentially held that no constitutional violation occurs by requiring a defendant to prove any affirmative defenses he asserts, we concluded that "a court may properly require a defendant to present evidence which raises a reasonable doubt on the affirmative defense asserted as long as the prosecution is required to prove each element of the crime charged beyond a reasonable doubt." *Id.*, 182 W.Va. at 653, 391 S.E.2d at 100. Thus, in the case before us now, the appellant's contention that the instruction regarding the defense of accidental killing improperly placed the burden of proof upon the appellant is simply without merit.

■ The third instructional error alleged by the appellant pertains to state's instruction number 6 [11] given at trial involving the inference that the jury could make from the defendant's use of a deadly weapon. The appellant asserts that there was no factual basis to support the giving of this instruction. The state argues that the instruction was not only a correct statement of the law, but is also applicable to the facts of the case in that the evidence at trial indicated that the defendant fired a .44 caliber weapon into the neck of an unarmed person and then claimed the gun went off as the result of a struggle between the two. Again, upon review of the evidence in this case, we find that there was sufficient factual support which justified the trial court giving the above-mentioned instruction. *See State v. Starkey*, 161 W.Va. 517, 525, 244 S.E.2d 219, 224 (1978).

■ The appellant's final error concerning the instructions given at trial involves the state's instruction on self-defense.[12] The appellant argues the state offered a self-defense instruction even though self-defense was not asserted by the appellant at trial. Further, the appellant contends that even if the instruction was appropriate, it was erroneous as a matter of law since it required the defense to prove self-defense by "credible evidence",[13] thereby placing an impermissible burden upon the appellant. The state, however, submits that the facts introduced at trial support a self-defense instruction.

The evidence introduced at trial included the appellant's statement to the police to

**10.** *See Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

**11.** State's instruction number 6 provided:

The Court instructs the jury that in a prosecution for murder, if the State proves beyond a reasonable doubt that the defendant, without lawful justification, excuse of provocation, fired a deadly weapon in the direction where a person was located then from such circumstances it may be inferred that the defendant acted with malice and the intent to kill.

**12.** State's instruction number 9 states:

The Court instructs the jury that a person has no right to use deadly force, such as a firearm, unless he actually believes and has reasonable grounds to believe that he is in immediate danger of death or serious bodily injury from which he can only save himself by using deadly force. A person who is threatened but with less than deadly force, is not permitted to use deadly force in return.

Furthermore, even when a person has been threatened with deadly force, once the danger to himself has passed he has no right to use deadly force, and no lawful claim of self-defense.

Therefore, if you find from all of the evidence that there is no credible evidence that the defendant had reasonable grounds to believe and actually did believe that he was in immediate danger of death or serious bodily injury by Lorilei Reed when the fatal shot was fired, from which he could only save himself by using deadly force against her, then you should find that the defendant did not act in self-defense.

You are further instructed that unless there is credible evidence that the defendant, Johnny Miller, acted in self-defense in shooting Lorilei Reed, the State has no burden of proving the absence of self-defense beyond a reasonable doubt.

**13.** In *Daniel* we held that the fact that defendant was required to present "'credible'" evidence did not render the instructions invalid. *Daniel*, 182 W.Va. at 653, 391 S.E.2d at 100.

the effect that the victim grabbed the gun first and was going to shoot him, that he began to struggle with her and eventually grabbed the gun before it went off. The appellant reiterated this account of the incident several times within the same statement given to police. Further, the defendant, through his witness William Thompson, a next-door neighbor of the victim and appellant, introduced the following evidence which tended to show the victim may have initiated the struggle which resulted in her death:

(By the defendant's attorney):

Q: And did you have occasion to be around them in the two- or three-week period before the time she died in October, 1988?

A: Yes, sir.

Q: Did you notice anything about the actions of the two of them towards each other on the occasion?

A: Yes, sir.

Q: What did you see?

A: Well, the main thing I seen was just her on him.

Q: Her on him?

A: Yeah. He was getting a tank or something there one day to fix his commode and I run down the road with him, and we come back and everything was all right. Then....

The well-established law is that "'[i]n this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested.' Syllabus Point 4, *State v. Hayes*, 136 W.Va. 199 [67 S.E.2d 9]." Syl. Pt. 2, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). Even though the appellant maintains that self-de-

fense was never asserted at trial, a review of the evidence reveals the contrary. We find that both the appellant's statement and the evidence presented by the appellant constituted sufficient facts to support instructing the jury as to self-defense prior to their deliberations.[14]

### IV.

The next assignment of error focuses upon the trial court's finding that sufficient evidence of premeditation and malice existed, and its consequent refusal to give appellant's instructions directing the jury that no verdict for first or second degree murder could be returned. The appellant asserts that there was no evidence of premeditation and none of malice if one ignores the improper evidence of motive. The state, however, contends that the evidence was more than sufficient.

The appellant relies upon our decision *Brant* to support his contention that no malice or premeditation existed. *See,* 162 W.Va. 762, 252 S.E.2d 901. The appellant maintains that "where the State's own evidence demonstrates circumstances affirmatively showing an absence of malice which would make an inference of malice from the use of a deadly weapon alone improper, a conviction for [first or] second degree murder cannot be upheld." *Id.,* 162 W.Va. at 765, 252 S.E.2d at 902, Syl. Pt. 2, in part.

The problem with this analysis is that the use of a deadly weapon was not the sole source of circumstantial evidence tending to show malice[15] which was presented to the jury. The state also presented evidence that the appellant knew the victim had turned him into the authorities for drug dealing, that the appellant pulled out chunks of the victim's hair, and the victim was shot point-blank in the back of the

---

**14.** The instruction given was not the best possible instruction since it only impliedly suggested the state's affirmative burden of proof in a self-defense case as set forth in *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978). Specifically, the jury should be instructed that "[o]nce there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." Syl. Pt. 4, *Kirtley,* 162 W.Va. at 250, 252 S.E.2d at 375.

While we do not condone the use of the instruction given in this case without a *Kirtley* instruction also, since a *Kirtley* instruction was not offered by the defendant at trial, the lack of such an instruction is not a proper matter to be decided upon this appeal. With no objection being made before the trial court, the matter is hereby waived. *See* W.Va.R.Evid. 103(a)(1).

**15.** "Malice may be inferred from the intentional use of a deadly weapon...." Syl. Pt. 2, in part, *Brant,* 162 W.Va. at 765, 252 S.E.2d at 902.

neck while she sat in a chair. Furthermore, the record is replete with evidence that the appellant and victim had a turbulent relationship with frequent physical altercations, and that the victim feared for her life at defendant's hands.

This evidence certainly was sufficient to show malice and premeditation. Thus, we find no error was committed by the trial court in its refusal to give defendant's instructions numbered 2 and 3.[16]

## V.

■ The last assignment of error is that the trial court permitted the state to change one of its peremptory challenges after the defense had already made its peremptory challenges.[17] The appellant asserts that the trial judge should have corrected the problem either by requiring the state to stick to its original strike or by declaring a mistrial. Instead, the appellant argues that the trial court allowed the state to make the change in its strikes with full knowledge of the defendant's six strikes. The state contends that the change was made to correct a mistake the prosecutor made on one strike and in no way affected the strikes of the defendant. The state suggested that the court permit the defendant to re-do their strikes in light of the state's charges. Furthermore, the state claims that the appellant neither claimed nor demonstrated prejudice in any resulting process. *See State v. Bongalis,* 180 W.Va. 584, 591, 378 S.E.2d 449, 456 (1989).

After hearing arguments of both sides, the court first properly concluded that the rule in a felony criminal case requires the state to make its two peremptory challenges first and the defendant to do so second, thus providing the defendant the right to make its strikes will full knowledge of the strikes chosen by the state. *See* W.Va.R.Crim.P. 24.

Secondly, the court determined that a proper course of action was to re-do the striking process,[18] with the state guaranteeing it would not now further alter its decision regarding who to strike. This was a correct course of action both because the defendant was not deprived of his right to strike last with full knowledge of the state's strikes, and because there was no showing of prejudice to the defendant.

Based upon the foregoing reasons, this case is remanded for further development in accordance with this opinion.

Affirmed in part and remanded for further proceedings.

---

16. Defendant's instruction number 2 states that "[t]he Court instructs the jury that under the law and evidence in this case your verdict with regards to the first degree murder charge must be NOT GUILTY."

Likewise, defendant's instruction number 3 states that "[t]he Court instructs the jury that under the law and evidence in this case your verdict with regards to the first degree murder charge and second degree murder charge must be NOT GUILTY."

17. What actually occurred was after the state had taken its two strikes and the defendant had taken his six, the state then took a strike for the alternate and changed one of the first two strikes originally made.

18. Specifically the trial court ruled as follows:

I agree to the point that she [the prosecutor] wouldn't be allowed to strike after you've [the appellant] taken your strikes. I agree with that, but I don't think it's prejudicial to redo the list to let her strike and let you strike again. If you want to strike the same ones, all right. If you want to strike different ones, in view of who she strikes, you have the privilege to do so. I don't see it to be prejudicial to do a new strike.