State of West Virginia

*v.*

Lowell F. Hood

(No. 13056)

Submitted September 21, 1971. Decided November 2, 1971.

*Goodwin & Goodwin, Joseph R. Goodwin, Thomas R. Goodwin,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Willard A. Sullivan,* Assistant Attorney General, for defendant in error.

Carrigan, Judge:

This is an appeal by Lowell F. Hood, hereinafter referred to as defendant, from a final order of the Circuit

Court of Jackson County, dated September 24, 1970, sentencing defendant to three days in the Jackson County jail, fining him $100 and revoking his driver's license for a period of six months upon his having been convicted of driving a motor vehicle while under the influence of intoxicating liquor.

During the early morning hours of Sunday, June 28, 1970, a member of the Ripley Police Department, Officer Lonnie Creed Hill, observed an automobile swerving and crossing over the center line of Main Street in Ripley. Thereafter, he sounded his siren and turned on his red light, whereupon the automobile pulled off of the right hand side of the road. Officer Hill asked the defendant, who was driving the automobile, to show him his driver's license and registration card. Officer Hill then asked defendant to get out of the car. Defendant did so, taking a few steps toward the rear of the car and leaning up against it. The officer testified that the defendant staggered and that he could smell alcohol on the defendant's breath. The officer then placed his hand on the defendant's shoulder and informed him that he was under arrest, whereupon the defendant grabbed the officer around the waist. The officer then hit the defendant twice, knocking him unconscious. Two officers, who arrived at the scene ten to fifteen minutes later, took the defendant to the courthouse, and there someone called Trooper D. J. Martin of the West Virginia Department of Public Safety to come and administer a Breathalyzer test. Officer Hill, the arresting officer, did not accompany the defendant to the courthouse, nor was he present during the test, he having gone from the scene of the arrest to the hospital to have his injured hand attended.

One of the officers who had taken defendant to the courthouse testified that defendant had vomited in the police cruiser just prior to coming into the courthouse. An employee of the sheriff's department testified that she observed that the defendant had vomit on his clothes and that his mouth was bloody. Trooper Martin testified that he arrived at the courthouse at about 4:00 a.m. and

administered the Breathalyzer test, the result of which was 0.13 per cent of alcohol in defendant's blood.

Two witnesses for the defense testified that they had seen the defendant during the preceding evening, and it was their opinion that he was sober. The defendant took the stand and testified that he had had five or six beers early in the evening and that the blows he received from Officer Hill rendered him unconscious, lacerated his mouth and knocked out several of his teeth. He also testified that he remembered nothing from the time he was knocked unconscious until he woke up in jail.

This Court granted defendant's writ of error and supersedeas on February 1, 1971, and on September 21, 1971, the case was submitted for decision upon briefs and oral arguments of counsel for both sides.

The defendant assigns as error the trial court's admitting the result of the Breathalyzer test in that there was no showing that the test was conducted in accordance with methods and standards prescribed by the West Virginia Department of Health and since no showing was made that the test was conducted at the direction of the arresting law enforcement officer; the court's giving State's Instruction No. 10 relating to the presumptions arising from the result of the Breathalyzer test; the court's refusing to give Defendant's Instructions 1, 5 and 15 all dealing with the Breathalyzer test; and the court's refusing to grant defendant's various motions during and after the trial.

The pivotal issue in this case is whether the admission into evidence of the result of the Breathalyzer test given to the defendant was proper.

Code, Chapter 17C, Article 5A, as amended, is entitled "IMPLIED CONSENT FOR CHEMICAL TEST FOR INTOXICATION." The pertinent provisions of this Article as applied to the case before us are Sections 1 and 5. Section 1, in pertinent part, reads as follows:

Any person who drives a motor vehicle upon the public streets or highways of this State shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to a chemical test of either his blood, breath or urine for the purpose of determining the alcoholic content of his blood whenever he shall be lawfully arrested by a law-enforcement officer as hereinafter defined for the offense of driving a motor vehicle upon the public streets or highways of this State while under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle . . . while under the influence of intoxicating liquor. * * * The person arrested shall be told that his refusal to submit to the test finally designated as provided in this section, will result in the suspension of his operator's or chauffeur's license, or junior or probationary operator's license, or nonresident privilege to drive for a period of six months.

For the purposes of this article the term "law-enforcement officer" shall mean and be limited to (1) any member of the department of public safety of this State, (2) any sheriff and any deputy sheriff of any county, and (3) any member of a municipal police department under civil service in accordance with the provisions of article five-A, chapter eight of this Code.

It should be noted that the requirements are that the implied consent applies (1) when incident to a lawful arrest; (2) by a law enforcement officer (which definition is limited to (a) a member of the department of public safety, (b) any sheriff or deputy sheriff of any county, or (c) a member of a municipal police department under civil service); and (3) when the test for blood alcohol is administered at the direction of the arresting law enforcement officer.

The applicable part of Section 5, dealing with the interpretation and use of the chemical test for blood alcohol, is as follows:

Upon trial for the offense of driving a motor vehicle . . . while under the influence of intoxicating liquor, * * * evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest or of the acts alleged, and shall give rise to the following presumptions or have the following effect:

\* \* \*

(c) Evidence that there was, at that time, ten hundredths of one percent or more, by weight, of alcohol in his blood, shall be admitted as prima facie evidence that the person was under the influence of intoxicating liquor.

\* \* \*

A chemical analysis of a person's blood, breath or urine, in order to give rise to the presumptions or to have the effect provided for in subdivisions (a), (b) and (c) of this section, *must* be performed in accordance with methods and standards approved by the State department of health . . . (emphasis added).

The provisions of this article shall not limit the introduction in any administrative or judicial proceeding of any other competent evidence bearing on the question of whether the person was under the influence of intoxicating liquor.

This provides that a percentage of 0.10 or more of alcohol in the blood is *prima facie* evidence that the person was under the influence of intoxicating liquor. (The evidence of the Breathalyzer test result admitted over defendant's objection in this case showed 0.13 per cent.) The above-quoted section provides further that in order to give rise to the presumption, the test *"must* be performed in accordance with methods and standards approved by the State department of health." (Emphasis added.)

Appellate courts have recognized the scientific principle of breath tests for alcohol in the blood as being acceptable. Various types of breath testing equipment have been developed and are in use in this country, the Breathalyzer

being one of the accepted testing devices. However, it is stressed that the admissibility of the result of a test of this type depends upon presenting an adequate foundation before the test results are admitted into evidence.

It further appears that the necessary foundation before the admission of the results of any test are: (1) That the testing device or equipment was in proper working order; (2) that the person giving and interpreting the test was properly qualified; (3) that the test was properly conducted; and (4) that there was compliance with any statutory requirements. *Jones* v. *Forrest City,* 239 Ark. 211, 388 S.W.2d 386 (1965); *State* v. *Quinn,* 182 N.W.2d 843 (Minn. 1971); *Otte* v. *State,* 172 Neb. 110, 108 N.W.2d 737 (1961); *State* v. *Miller,* 64 N. J. Super. 262, 165 A.2d 829 (1960); *People* v. *Donaldson,* 319 N.Y.S.2d 172, 36 A.D.2d 37 (1971); *State* v. *Sickles,* 25 Ohio App. 2d 1, 265 N.E.2d 787 (1970); *Pruitt* v. *State,* 216 Tenn. 686, 393 S.W.2d 747 (1965); *State* v. *Magoon,* 264 A.2d 779 (Vt. 1970); *State* v. *Baker,* 56 Wash. 2d 846, 355 P.2d 806 (1960); Slough & Wilson, *Alcohol and the Motorist: Practical and Legal Problems of Chemical Testing,* 44 MINN. L. REV. 673 (1960).

The statutes of Nebraska and Arkansas appearing in the *Otte* and *Jones* cases, above-cited, are similar to the West Virginia statute in that each provides that the test must be performed in accordance with methods approved by the Department of Health.

An examination of various cases leads to the conclusion that not only should the person administering the test be qualified, but the equipment must be in proper operating condition and have been periodically tested. In addition, there is authority that the subject of any breath test should be observed for at least fifteen minutes to determine that he takes no food, drinks or other substance into his mouth during this period, since any foreign substance in the mouth or taken during this period will destroy the validity of the test.

In the case before us the only foundation presented by the State prior to the admission of the results of the Breathalyzer test was that the trooper administering this test had been instructed for two and one-half days and had given the test approximately 100 to 150 times. The State did not show the Breathalyzer was in proper working order and most importantly did not show that the test was administered in accordance with the methods and standards approved by the State Department of Health, which the statute says is a *"must."* Furthermore, it is not shown that the test was administered at the direction of the arresting officer, Lonnie Creed Hill, since Officer Hill was not present when the test was given. It was also not shown that the Ripley Police Department is under civil service, when Code, 17C-5A-1, as amended, says the implied consent applies only to a lawful arrest by a law enforcement officer as thereinafter defined, which in the case of city policemen applies only to those under civil service.

While it may be contended that there was other evidence presented to show defendant was under the influence of intoxicating liquor, and that the Breathalyzer test result was merely cumulative, the statute says that a test result of 0.13% is *prima facie* evidence of defendant's intoxicated condition. There is widespread, if not universal, acceptance without question of the results of scientific and mechanical tests, and undoubtedly the jury in the present case gave great weight to the result of the Breathalyzer test. This would be particularly true where the result of the test is prima facie evidence of being under the influence of intoxicating liquor. The admission of the result of the Breathalyzer test without proper foundation was prejudicial to the defendant.

Having determined that the admission of the result of the Breathalyzer test in this case was prejudicial to the defendant, it is unnecessary to pass upon defendant's objection to the various instructions, all of which dealt with the Breathalyzer test.

The judgment of the Circuit Court of Jackson County is reversed, the verdict of the jury set aside and the case is remanded for further proceedings consistent with the views expressed in this opinion.

*Judgment reversed; verdict set aside; remanded with directions.*