STATE OF WEST VIRGINIA

*v.*

BRAILFORD M. KEETON, JR.

(No. 14821)

Decided December 2, 1980.

*Stephen P. Meyer, Paul S. Perfater* for appellant.

*Chauncey H. Browning*, Attorney General, *Billie Gray*, Assistant Attorney General, for appellee.

NEELY, CHIEF JUSTICE:

Defendant, Brailford M. Keeton, Jr., appeals from a decision of the Circuit Court of Kanawha County, sentencing him to life imprisonment with a recommendation of mercy upon his conviction of first degree murder. On 6 January 1979, at approximately 3:00 a.m., defendant struck and killed Terry Wayne Shaffer with an automobile in Charleston; however, defendant argued that he was so intoxicated that he didn't see anyone in the street before the impact. Defendant has two primary assignments of

error which involve his intoxication defense: (1) the exclusion of a Breathalyzer test which gave evidence of his state of intoxication; and, (2) the failure of the trial court to grant an instruction regarding defendant's level of intoxication. We agree that defendant's intoxication defense was severely limited by these two trial court decisions which were erroneous and we reverse and remand.

It is uncontested that defendant was the driver of the automobile which struck and killed the victim, Terry Shaffer. The evidence regarding the events on the night of the alleged murder differs markedly. All of the major witnesses were at the Willow Club in Charleston from approximately 11:30 p.m. until closing at 3:00 a.m. Nearly all say that there was no argument between the defendant and his friends and the victim and the victim's friends; however, the defendant's friend, Pamela Smith, testified that there may have been an argument between the defendant and the victim, although she could not be sure. Pamela Smith, Opal Hartley, and Lettie Spradling left with the defendant before the victim and his friends left. Smith and Hartley rode with the defendant in the front seat of his automobile while Lettie Spradling got into the back seat where he fell asleep and remained oblivious to the ensuing events. Defendant drove Hartley to her home, and Smith asked to be taken to her car, but according to her testimony defendant responded that he expected trouble, whereupon he then placed a large knife on the seat between them. According to Smith, as the defendant was approaching the victim and his friends, who were standing in front of a truck on Washington Street, the defendant said that there was something he had to do before letting her out. The defendant denied uttering the statements attributed to him by Smith.

The victim's friends testified that the car suddenly veered towards them and that the victim had his back toward the car and never saw it approaching. The car struck two of the four people standing outside the truck, namely, the victim and a friend of his who also received severe injuries. All witnesses testified that the automobile

was going very fast; the Chief Medical Examiner estimated from the injuries sustained that the automobile was proceeding at between 25 and 30 miles per hour.

After the impact, Smith testified that the defendant appeared to have "blacked out" and that he asked, "How did my windshield get like that?" The defendant then drove Smith to her automobile which was parked a short distance away. He then circled the block and drove slowly past where Shaffer's body lay and where Shaffer's friend lay severely injured. The other two individuals who were with the victim, Chester Wheeler and Terry Quigley, testified that the defendant smiled as he drove past; the defendant admitted driving by although he denied smiling. The defendant then drove to his home, got Spradling out of the car, and then led the police on a chase through the streets of Charleston, after hearing on his CB radio that the police were searching for him.

Shortly after the defendant was apprehended by the police, a Breathalyzer test was administered. The test, which was administered about forty-five minutes after the incident, registered a .22% level of intoxication. At the trial, on the State's request, the trial judge conducted a hearing in chambers on the admissibility of the test results. The trial judge found that a proper foundation for admissibility had been laid by the defendant under the rules of *State v. Hood*, 155 W.Va. 337, 184 S.E.2d 334 (1971), which the State contended were applicable in the case. After the testimony about the test had been completed before the jury, the trial court, apparently reconsidering his former ruling, granted the State's motion to strike the testimony about the Breathalyzer and the court admonished the jury to disregard the portion of the deputy's testimony and noted the objection of the defendant.

The trial court also refused to give the defendant's Instruction No. 19 regarding the effect of intoxication on the formulation of intent which reads:

> The Court instructs the jury that if they believe from the evidence that Brailford M. Keeton, Jr., killed Terry Shaffer as charged in the indictment, and, at the time of such killing Brailford M. Keeton,

Jr. was under the influence of liquor voluntarily taken by him, then said intoxication is in law no excuse for the act done by Brailford M. Keeton, Jr., unless they believe from the evidence that such intoxication was such as did in fact deprive him at the time of the killing of the mental capacity to form a malicious purpose to kill, in which event, they will find Brailford M. Keeton, Jr. only guilty of involuntary manslaughter.

While this instruction is incorrect in its concluding portion which instructs the jury that voluntary intoxication can reduce a homicide to involuntary manslaughter, nonetheless, failure to give some instruction on intoxication when it was the defendant's primary defense is plain error. The issue of intoxication was raised by the defendant and the record clearly supports the conclusion that the trial court would not give any intoxication instruction. While ordinarily this Court will not consider the failure to give instructions not properly presented, the problem in this case is so obvious that the trial court should have offered to amend the instruction to conform to the well established law and we conclude that this omission falls within the plain error exception.

## I

Defendant assigned several errors but the crux of his argument on appeal centers on his intoxication defense.[1]

---

[1] Disposition of the defendant's two principal errors makes it unnecessary to consider the others. For the record, defendant argued that the State failed properly to preserve evidence, namely his automobile which had been tampered with, but there was no showing that the evidence tampered with would have been favorable under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed. 2d 215 (1963) which held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process." Furthermore, as the Washington state court reasoned in a case offered by counsel for defendant, there must be a "reasonable possibility" that the evidence was material to the defendant's guilt or innocence. *State v. Wright*, 87 Wash. 2d. 783, 557 P.2d 1 (Wash. 1976). Defendant also challenges the prejudicial testimony of an expert witness, the Chief Medical Examiner, who characterized the "manner of death" as homicide. The conclusion was clearly based on hearsay; however, the error, which originated in the autopsy report, was harmless. The

Due to the trial court's decision to strike the evidence the jury received on the Breathalyzer test, and due to the decision not to grant the instruction regarding defendant's ability to form the proper intent while intoxicated, the defendant was effectively denied his most persuasive argument.

The State argued that the evidence from the Breathalyzer test was inadmissible because the proper procedure outlined in *State v. Hood,* 155 W.Va. 337, 184 S.E.2d 334 (1971) for insuring the accuracy of the test had not been followed. While the State is technically correct that the test was improperly administered because the officer had not complied with all the requirements of *State v. Hood,*[2] *supra,* it is obvious that the *Hood* requirements are designed to insure that defendants charged with driving under the influence of intoxicating liquor are not found guilty on the basis of inaccurate tests. Where, however, the defendant seeks to introduce such evidence on his own behalf there is no comparable requirement for strict compliance with the *Hood* test. The result of .22% on the Breathalyzer test[3] would not, of course, be unassailable, and would be subject to attack by the State because the test was improperly administered.

## II

While it is true that voluntary drunkenness does not ordinarily excuse a crime, *State v. Robinson,* 20 W.Va. 713 (1882), it may reduce the degree of the crime or negative a specific intent. *Wheatley v. U.S.,* 159 F.2d 599 (4th Cir.

---

defendant also assigned standard errors on insufficient evidence, failure to give an instruction on intent, and failure to give a circumstantial evidence instruction, all of which are sufficiently frivolous not to require comment.

[2] Under *State v. Hood* the necessary foundation which must be laid before the admission of test results is: (1) that the testing device or equipment was in proper working order; (2) that the person giving and interpreting the test was properly qualified; (3) that the test was properly conducted; and, (4) that there was compliance with any statutory requirements.

[3] A blood alcohol content of .10% serves as prima facie evidence of intoxication for purposes of drunk driving under *W.Va. Code,* 17C-5A-5(c) [1968].

1947).[4] The trial court's denial of the requested instruction regarding the defendant's ability to form the proper intent for first degree murder erased the possibility of a charge of second degree murder. Our Court has stated that, "if a sane man, not having voluntarily made himself drunk for the purpose of committing crime, does, while in a state of such gross intoxication as to render him incapable of deliberation, commit a homicide, he is guilty of no higher offense than murder in the second degree." *State v. Kidwell*, 62 W.Va. 466, 471, 59 S.E. 494, 496 (1907).

We have, of course, upheld the trial court's refusal to instruct the jury on the defense of drunkenness on several occasions.[5] As a general rule we have held that the level of intoxication must be "such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation," syl. pt. 1, *State v. Davis*, 52 W.Va. 224, 43 S.E. 99 (1902); however, where the weapon was non-deadly, namely, an automobile rather than a knife or a gun the conclusion that homicide was intended is not as readily reached. While the testimony of the defendant was that he was only "pretty high," he registered a .22% blood alcohol content reading forty-five minutes after the incident. The refusal to allow the Breathalyzer evidence along with the refusal to grant the instruction on incapacity to form the requisite intent, denied the jury the opportunity to consider the possibility of a second degree murder conviction.

The ability of the defendant to maneuver his automobile during a prolonged chase through the streets of Charleston does suggest that the defendant may not have been sufficiently incapacitated by alcohol to erase the requisite intent; however, that is a question to be determined by a

---

[4] For a complete discussion of this principle *see* 2 Am. Jur. 2d, Criminal Law § 107 (1965); 22 C.J.S. Crim. Law § 68 (1961); and, Annot., 8 ACR 3d 1236 (1966).

[5] *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975), *overruled on other grds., State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980); *State v. Burdette*, 135 W.Va. 106, 63 S.E.2d 69 (1950); *State v. Corey*, 114 W.Va. 118, 171 S.E. 114 (1933); *State v. Kidwell*, 62 W.Va. 466, 59 S.E. 494 (1907); and, *State v. Davis*, 52 W.Va. 224, 43 S.E. 99 (1902).

jury and not by our Court. Defendant argued strenuously that the level of intoxication was sufficient to constitute a complete defense such as occurred in *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979). We would like to take this opportunity to reiterate the *caveat* that was plainly stated in that case: *Brant* consisted of a peculiar set of facts that will probably never be repeated; therefore, the opinion is of little general precedential value.

For the foregoing reasons, the decision of the Circuit Court of Kanawha County is reversed and remanded.

*Reversed and remanded.*