**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Patricia Miller,**
**Petitioner Below, Petitioner**

**vs.)** **No. 19-1148** (Kanawha County 17-P-284)

**J.D. Sallaz, Superintendent,**
**Lakin Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Patricia Miller, by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's November 14, 2019, order denying her petition for a post-conviction writ of habeas corpus. J.D. Sallaz, Superintendent, Lakin Correctional Center, by counsel Holly M. Flanigan, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that she received ineffective assistance of trial counsel and the circuit court erred in denying her petition on this ground.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following an incident in which petitioner stabbed her roommate, Victoria Summers ("the victim"), in the heart and caused her death in October of 2014, petitioner was indicted on one count of first-degree murder. Petitioner confessed to the crime upon her arrest, though she later moved to suppress her statement to law enforcement on the basis of her intoxication. The trial court held a hearing on the motion to suppress in June of 2016, during which the officer who took petitioner's statement described her as "pretty emotional, but . . . alert . . . [and] coherent." According to the officer, petitioner "knew exactly what was going on, . . . how important the situation was, and she said that she did." The officer indicated that he "could smell an odor of alcohol coming from her person, . . . but she didn't seem intoxicated." Ultimately, the trial court denied petitioner's motion

1

to suppress, finding that she was advised of her *Miranda*[1] rights, freely and voluntarily waived those rights, and was not intoxicated "to the point where she did not know what she was doing."

Eventually, petitioner and the State entered into a binding plea agreement under Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure whereby petitioner would enter a plea of guilty to one count of second-degree murder in exchange for an agreed upon sentence of twenty-five years of incarceration. On June 13, 2016, the parties appeared for a plea hearing, during which the terms of the agreement were set forth on the record, and petitioner acknowledged that no one made any promises or threats in order to get her to accept the plea agreement. During the plea colloquy, the court asked petitioner's trial counsel if he "discussed all of the facts and circumstances of this matter" with petitioner and "investigated all possible defenses that she might have to this charge," and counsel responded affirmatively to both questions. Petitioner indicated that when she discussed her plea with trial counsel, they "discuss[ed] the maximum sentence [she] could receive if [she] pled guilty to second-degree murder, pursuant to a plea agreement." Petitioner then explained that her understanding of the maximum sentence she could receive was forty-five years, given that she had a prior felony conviction that could expose her to a recidivist enhancement. Petitioner then confirmed that, by accepting the State's binding plea agreement, she "would be sentenced [to] the penitentiary for a determinate term of [twenty-five] years." Ultimately, the Court accepted petitioner's guilty plea and imposed a sentence of twenty-five years of incarceration. Petitioner did not appeal this conviction or sentence.

In 2017, petitioner, then self-represented, filed a petition for a writ of habeas corpus. After the circuit court appointed counsel for petitioner, she filed an amended petition in January of 2018 setting forth several grounds for relief. Relevant to the current appeal, petitioner specifically alleged that her trial counsel was ineffective for failing to properly explain her parole eligibility under her plea agreement and that counsel failed to conduct an investigation into intoxication as a possible defense.

On November 19, 2018, the court held an omnibus evidentiary hearing, during which petitioner and her trial counsel both testified. According to petitioner's testimony, she abused cocaine with the victim on the day of the crime and also consumed alcohol. After petitioner stabbed the victim, she left the apartment and heard sirens approaching. Petitioner was able to "describe[], specifically, by street name where she went after she stabbed the victim, and described the clothes she was wearing at the time of the attack." Petitioner indicated that she discussed the option of going to trial with her attorney. She also claimed that trial counsel "assured her that she would be paroled at the first opportunity, which she represented to be one-third of her time." Petitioner's trial counsel, on the other hand, testified that he explained to petitioner that she would not be parole eligible for ten years if she accepted the plea agreement for second-degree murder. Although counsel agreed that he spoke with petitioner about parole eligibility for voluntary manslaughter when engaging in negotiations with the State regarding that lesser-included offense, counsel was clear that he explained to petitioner that parole eligibility for second-degree murder was only after ten years and that petitioner understood. Trial counsel also testified that he did not believe petitioner's intoxication would have swayed a jury because she gave a clear statement to police

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

shortly after the crime. As such, counsel did not believe that a psychiatric or psychological evaluation would have been beneficial to the defense.

In denying petitioner habeas relief, the court noted that the police report of the incident in question indicated that petitioner "said that she understood what was going on" when asked if she was intoxicated when she gave her statement shortly after the crime. The habeas court also noted the testimony from the officer who took petitioner's statement, wherein he indicated that petitioner did not appear to be intoxicated to the point that she did not appreciate the circumstances. The court also addressed discrepancies between petitioner's testimony and that of her trial counsel, finding that trial counsel's testimony was more credible. The court concluded that "there is no evidence to demonstrate that petitioner was not competent at the time of the offense, even though she had been drinking and has (by self-report) a substance abuse problem." Further, the court found that petitioner's counsel "was aware of her substance abuse . . . [but] saw nothing in his client and her recollection of events, particularly her clear, detailed and articulate statement to police that indicated she was not criminally responsible." The court further found that counsel would not have ignored any plausible defense and would have sought an evaluation prior to the entry of the plea if there was any reason to believe that petitioner lacked criminal responsibility. The court further found that petitioner could not establish any prejudice in regard to her assertion that counsel was ineffective for failing to investigate a diminished capacity defense because "[r]ejecting this plea offer and going to trial would not have been a rational decision" given that the plea agreement "took first-degree murder off the table." The court also concluded that petitioner "did not receive incorrect information about parole eligibility nor was she guaranteed by counsel that she would receive parole at her earliest opportunity." While counsel may have expressed an opinion that petitioner's age "would work in her favor before the board," the court found that counsel not only testified that he made no such guarantee, but that "no experienced trial lawyer would ever guarantee the results of an event which could not even occur until years in the future." The court specifically "reject[ed] petitioner's contention and testimony from the omnibus hearing that she was told she would only have to serve one-third of her sentence before she was parole eligible." As such, the court denied petitioner habeas relief. It is from the order denying her petition for a writ of habeas corpus that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009). Further, the standard for evaluating claims of ineffective assistance of counsel is well established:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance

was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Further,

[i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6-7, 459 S.E.2d at 117-18, syl. pt. 6. Further, in regard to the "prejudice" element, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. That is to say that deficient performance alone "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, this Court has warned that "[u]nder the[] rules and presumptions [established in *Strickland* and its progeny], the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another." *Miller*, 194 W. Va. at 16, 459 S.E.2d at 127. As it relates to petitioner's allegation that counsel was ineffective in counseling her regarding her possible parole eligibility, the Court notes that "[w]e have applied the foregoing *Miller/Strickland* standards for evaluation of ineffective assistance of counsel claims to cases involving guilty pleas." *Raines v. Ballard*, 236 W. Va. 588, 782 S.E.2d 775 (2016) (citations omitted). With these standards in mind, we turn to petitioner's arguments on appeal.

According to petitioner, her counsel was deficient in failing to "impart her with a meaningful understanding of the plea she undertook . . . and the failure to adequately explore defenses related to [her] intoxication." In support of the first claim, petitioner alleges that she and her counsel discussed the potential sentence and parole eligibility on a charge of manslaughter "up until the very day of jury selection" and that it was "crucial that counsel ensured [her] full understanding once the second[-]degree murder plea became an option." Essentially, petitioner argues that "the evidence is unsettled as to whether there was any meaningful effort of counsel to convey all differences under the new plea" before she accepted same. Petitioner also concludes, without citing any evidence, that "a better understanding of the case . . . would have precluded her acceptance of the plea offered and thereby achieved a 'different result.'" This argument, however, is entirely unsupported by the record.

As the circuit court found, petitioner's trial counsel testified several times that he unequivocally explained to petitioner that she would not be parole eligible for a conviction of second-degree murder until she served ten years of incarceration. Not only that, but counsel testified that petitioner understood this explanation. While it is true that petitioner testified that counsel informed her that she would only have to serve a third of her sentence and would be guaranteed parole at the first opportunity, the habeas court specifically found that petitioner's

testimony lacked credibility. According to the court, petitioner's trial counsel "ha[d] no motive to lie, embellish, or obfuscate in his testimony because he has no vested interest in the outcome of the proceeding," while "[t]he same, obviously, is not true for the petitioner." The court further based its credibility determinations on "the demeanor of the witness as well as the credulity or lack thereof of specific statements." We decline to disturb these credibility determinations on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Even more importantly, assuming that counsel was deficient in explaining petitioner's parole eligibility, petitioner has failed to establish that the outcome of the proceedings would have been different. On appeal, petitioner simply concludes that she would have proceeded to trial. However, as the habeas court found, such a decision would not have been rational, given that it would have exposed petitioner to a possible conviction for first-degree murder, which could have resulted in a sentence of life, without mercy. As such, petitioner cannot satisfy either element of the *Strickland* test in regard to her argument that counsel failed to properly inform her of her possible parole eligibility.

In regard to petitioner's final argument, we similarly find that she is not entitled to relief. Petitioner argues that counsel's failure to obtain a psychiatric or psychological evaluation, and resulting failure to consider the defenses available following findings from such an evaluation, constitutes ineffective assistance. According to petitioner, her intoxication on the day of the crime, and her history of substance abuse, could have supported a valid defense at trial. However, as the habeas court found, petitioner's counsel had no reason to believe that such an evaluation was necessary, given the fact that petitioner gave a clear, coherent statement to police shortly after the crime in question. As this Court recently noted, "*Strickland* has a good deal to say about the 'duty to investigate' both generally" and in the context of possible defenses. *Lloyd v. Terry*, No. 16-1166, 2018 WL 1319187 (W. Va. March 14, 2018)(memorandum decision). Specifically,

> strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgements.

> [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 691. As the circuit court found, "petitioner's trial counsel would have explored the issue of competency to commit [the] crime, diminished capacity, or criminal responsibility if there were any indications such a defense would have been availing." Just as we found in *Lloyd*, there is nothing in the record that indicates that an investigation into petitioner's intoxication and any possible defenses stemming from that intoxication was necessary. As such, counsel cannot be said to have provided ineffective representation.

5

Even more importantly, petitioner cannot satisfy the prejudice element of the *Strickland* test. Although she again concludes that she would not have accepted the plea and would have proceeded to trial if she were more informed of possible defenses, the habeas court correctly found that

> [v]oluntary drunkenness is generally never an excuse for a crime, but where a defendant is charged with murder, and it appears that the defendant was too drunk to be capable of deliberating and premeditating, in that instance intoxication may reduce murder in the first degree to murder in the second degree, as long as the specific intent did not antedate the intoxication.

Syl. Pt. 2, *State v. Keeton*, 166 W. Va. 77, 272 S.E.2d 817 (1980). Further, "[i]ntoxication to reduce an unlawful homicide from murder in the first degree, must be such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation." *Id.* at 77, 272 S.E.2d at 818, Syl. Pt. 3 (citation omitted). In citing these holdings, the habeas court noted that if petitioner had convinced the jury that she was incapable of premeditating and deliberating, "her offense would have been reduced to second[-]degree murder" which is the crime to which she pled. This supports the habeas court's conclusion that any decision to proceed to trial and expose herself to a potential sentence of life, without mercy, would not have been a rational decision. Further, as we found in *Lloyd,*

> [a] "defendant's mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. Rather, we look to the factual circumstances surrounding the plea to determine whether defendant would have proceeded to trial." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (brackets, citation, and internal quotation marks omitted); see *Hill*[ *v. Lockhart*], 474 U.S. [52,] 59 [1985]. And where, as here, "the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id*. at 59.

No. 16-1166, 2018 WL 1319187, at *8. As such, petitioner's failure to provide any analysis as to whether the affirmative defense was likely to have succeeded at trial is fatal. Further, as outlined above, the best-case scenario for petitioner advancing an intoxication defense at trial would have been a conviction of second-degree murder, the crime to which she ultimately pled. Therefore, petitioner cannot satisfy the prejudice element of *Strickland* and is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 14, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

6

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton