## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 23-490** (Berkeley County CC-02-2020-F-21)

**Richard Austin,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Richard Austin appeals his conviction and sentence as set forth in the Circuit Court of Berkeley County's July 17, 2023, sentencing order, for first-degree murder and attempted first-degree murder.[1] The petitioner asserts that the evidence was insufficient to support his convictions, and that the circuit court erred in precluding him from presenting evidence of voluntary intoxication at the time of the offense. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In February 2020, the petitioner was indicted for first-degree murder of his stepfather, John Henderson, and attempted first-degree murder of his mother, Dawn Austin. The petitioner was forensically evaluated in 2020, and based on this evaluation, the circuit court found him incompetent to stand trial. The petitioner was eventually restored to competency in 2023, and the case was placed on the circuit court's trial docket.

At a pretrial hearing, the petitioner's counsel discussed "some very strange conversations" between the petitioner and the Rockingham County, Virginia, law enforcement officers who arrested him, which were reflected in the dash cam video of his arrest. Counsel did not argue that the petitioner's statements in the video were involuntary. Rather, counsel stated that he would "ask for a sidebar and kind of hash it out" if the State wished to admit the video at trial. The State agreed to address this issue "when it arises" at trial.

At trial, Detective Jared Luciano of the Martinsburg Police Department testified that, on June 28, 2019, at 11:45 p.m., he responded to a 9-1-1 call from Ms. Austin, who stated that the petitioner fired a gun at her in her home. Detective Luciano arrived at the scene and found the

---

[1] The petitioner appears by counsel B. Craig Manford, and the respondent appears by Attorney General John B. McCuskey and Assistant Attorney General Cassandra Means-Moore. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

petitioner's stepfather, John Henderson, deceased. Ms. Austin's car was missing, and police notified local law enforcement agencies to be on the lookout for a vehicle that matched its description. Detective Luciano also confirmed that the Martinsburg Police Department charged the petitioner with public intoxication earlier that day, and he was driven home. Detective Luciano further identified photos taken inside the house during the investigation, which showed "bloody footprints," and a bullet embedded in a kitchen cabinet that was shot through the living room wall in the direction of Ms. Austin while she was fleeing from the petitioner.

Constance Barrow, the petitioner's niece, testified that she resided in the home with the petitioner's family, her fiancé Richard Jefferson, and their children. Ms. Barrow testified that she was in New York at the time of the shooting, and that the petitioner was excited she was leaving and told her that she should stay in New York longer. Mr. Jefferson testified that he owned a black Smith & Wesson M&P nine-millimeter semi-automatic pistol that he kept in his nightstand, and, in May 2019, the pistol went missing.

Ms. Austin testified that, on June 28, 2019, the petitioner had been drinking, and she received a text message from her daughter that "he had scared the younger children earlier that day by hollering and screaming that he was going to kill the M-effers, all the M-effers" while he played with a knife. Later that evening, Ms. Austin was watching a movie in her home when she heard a metal clicking sound, which she later understood to be "the racking of a gun." She went to the living room to investigate and asked the petitioner about the noise. The petitioner jumped out of his chair, "got up in [Ms. Austin's] space," and responded, "What noise?" Ms. Austin testified that the petitioner was acting "very antsy[,]" which was unusual for him. She told the petitioner that she was going to call the police because she felt "very uncomfortable" and "threatened[.]" Ms. Austin stated that, in response, the petitioner screamed, "Threatened. Threatened[,]" and "about that time I started running." Then, "he screamed this is a threat, bitch, and the gun went off." Ms. Austin escaped from the home and heard three more gunshots. Then, the petitioner went outside and "called, 'Mama,'" in what she felt was an attempt to lure her inside the house, but Ms. Austin "figured he had already shot my husband and the last thing I was going to do was go back in the house." Instead, Ms. Austin ran to a neighbor's house and called 9-1-1. The next day, she found a shovel and a hole in the ground in her back yard – as if something had been buried and dug up there. Ms. Austin also testified that she was aware that Mr. Jefferson's pistol was missing, but the petitioner had previously denied having it.

Deputy Tray Carter of the Rockingham County, Virginia, Sheriff's Office testified that, around 4:00 a.m. on June 29, 2019, he initiated a traffic stop of the petitioner. While Deputy Carter was on the witness stand, the State played the dash cam video of the traffic stop, in which the petitioner made several unsolicited admissions such as, "See, I shot him. . . . I picked the right guy to f***ing kill. . . . I killed him. . . . I guess I shot the right f***ing motherf***er, didn't I? . . . I killed the motherf***er."[2] The petitioner did not object to the admission of the dash cam video. Deputy Carter also testified that he did not observe any indication that the petitioner was

_____

[2] The petitioner made other statements in the video claiming that he was Abraham Lincoln's nephew, "Prince Frederick[,]" and accusing his stepfather, Mr. Henderson, of poisoning the water supply for the City of Martinsburg and using WiFi to kill a guinea pig.

intoxicated during the traffic stop. Detective Donald Dean, also from the Rockingham County Sheriff's Office, testified that he conducted a gunshot residue test on the petitioner after he was arrested, and Detective Luciano received this evidence on July 2, 2019.

Lieutenant Adam Albaugh, with the Martinsburg Police Department, testified that he searched Ms. Austin's car after the petitioner was arrested and found a black Smith & Wesson M&P nine-millimeter semi-automatic pistol. Lieutenant Albaugh also testified that, while he was at the scene of the shooting, a bullet was removed from the floor near Mr. Henderson's body.

Dr. Metin Savasman, a deputy chief medical examiner with the West Virginia Medical Examiner's Office, testified that the cause of Mr. Henderson's death was "multiple gunshot wounds[,]" and "the manner of death was homicide." Dr. Savasman further testified that he recovered one of the bullets from Mr. Henderson's arm during the autopsy.

Aaron Dean, a forensic scientist with the West Virginia State Police Forensic Laboratory (Forensic Lab), testified that he reviewed the physical evidence sent by law enforcement in this case, including a pistol, bullets, bullet cartridges, clothing, and gunshot residue kits. Mr. Dean testified that he performed presumptive blood tests on the evidence and identified blood on the petitioner's left shoe. Nicholas King, a forensic scientist for the Forensic Lab, testified that he performed a DNA analysis of evidence submitted by law enforcement, and he found the petitioner's DNA on the pistol grip and serrations on the slide of the pistol. Mr. King also testified that blood found on the petitioner's left shoe matched Mr. Henderson's DNA profile.

Calissa Carper, the supervisor of the firearm and toolmarks section of the Forensic Lab, testified that her testing linked the pistol found in the petitioner's vehicle to a cartridge casing and a bullet submitted by law enforcement. Koren Powers, a quality assurance manager for the Forensic Lab, testified that her analysis of samples taken from the petitioner found evidence of gunshot residue on the petitioner's hands.

The State rested its case-in-chief, and the petitioner moved for a judgment of acquittal, arguing that the evidence did not support the charge of attempted murder of Ms. Austin because the bullet that was shot through the living room wall into a kitchen cabinet went "nowhere near" Ms. Austin as she fled the home. The petitioner also argued that there was insufficient evidence of premeditated first-degree murder, and instead, the evidence tended to show that Mr. Henderson was accidentally shot twice in a "struggle" for the pistol. The court denied the petitioner's motion for judgment of acquittal. The petitioner presented no evidence, and the case was submitted to the jury. The jury convicted the petitioner of first-degree murder of Mr. Henderson and attempted first-degree murder of Ms. Austin.[3]

---

[3] After the jury's guilty verdict, the petitioner testified in the bifurcated mercy phase of his trial. During his testimony, he admitted to digging up a nine-millimeter semi-automatic pistol that he had buried in the backyard because he planned to "give it back." The petitioner also admitted that, when Ms. Austin confronted him, he "snatched the gun up," and Ms. Austin "ran right in front of where [he] shot the gun through the wall into the kitchen." The petitioner further testified that after Ms. Austin fled, Mr. Henderson entered the room, and "[i]t happened before I could even think. Boom. Pulled the trigger. He went and fell down. Boom. Pulled the trigger again."

3

After the verdict, the petitioner renewed his motion for judgment of acquittal, arguing that there was insufficient evidence of premeditation and deliberation to support his first-degree murder conviction. The petitioner also filed a motion for new trial arguing that it was error for the circuit court to prevent him from arguing that the petitioner's intoxication negated the evidence of malice required to convict him of first-degree murder. The circuit court denied these motions and sentenced the petitioner to life imprisonment without the possibility of parole for first-degree murder, concurrent with three to fifteen years of imprisonment for attempted first-degree murder.

On appeal, the petitioner claims that the circuit court erred when it denied his motion for judgment of acquittal based on the sufficiency of the evidence, and we apply a de novo standard of review to such a ruling. *See State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). We have further held that "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

To establish attempted first-degree murder of Ms. Austin, the State was required to prove that the petitioner had "a specific intent to commit" first-degree murder, and he made "an overt act toward the commission [of first-degree murder], which falls short of completing the underlying crime." *See* Syl. Pt. 2, in part, *State v. Starkey*, 161 W. Va. 517, 244 S.E.2d 219 (1978); *State v. Burd*, 187 W. Va. 415, 419, 419 S.E.2d 676, 680 (1991) (ruling that attempted murder is proven "where formation of criminal intent is accompanied by preparation to commit the crime of murder and a direct, overt, and substantial act toward its perpetration"). Further, the first-degree murder of Mr. Henderson may be proven by evidence of "any wil[l]ful, deliberate and premeditated killing[.]" *See* Syl. Pt. 6, in part, *State v. Sims*, 162 W. Va. 212, 248 S.E.2d 834 (1978); W. Va. Code § 61-2-1.

Here, the State presented expert testimony that Mr. Henderson was killed by multiple gunshot wounds, and the petitioner's DNA was found on the pistol that was used to kill Mr. Henderson. The State also presented expert testimony that, when he was arrested, the petitioner had gunshot residue on his hands, and Mr. Henderson's blood was on his shoe. Further, the State offered evidence that the petitioner spontaneously admitted to Deputy Carter that he shot and killed Mr. Henderson. Ms. Austin testified that, hours prior to the shooting, the petitioner voiced his intent to "kill the M-effers" and later that day, he retrieved a pistol that he had buried in the backyard and took it inside the home. When Ms. Austin approached the petitioner in the living room to investigate the sound of a pistol slide racking, the petitioner became aggressive. Ms. Austin responded that she felt threatened and began to leave the room to call police. Then, the petitioner stated, "This is a threat, bitch," and fired a shot in her direction that went through the living room wall and into the kitchen. After Ms. Austin escaped from the house, she heard more shots fired. Considering the evidence presented in this case, we conclude that the Court did not err when it denied the petitioner's motions for a judgment of acquittal.

The petitioner also argues that the circuit court erred in precluding him from presenting evidence of his intoxication at the time of the offense, and that the State "opened the door" to this evidence after it played the traffic stop video for the jury. We review the trial court's "evidentiary

4

rulings . . . under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). We have held that

> [v]oluntary drunkenness is generally never an excuse for a crime, but where a defendant is charged with murder, and it appears that the defendant was too drunk to be capable of deliberating and premeditating, in that instance intoxication may reduce murder in the first degree to murder in the second degree, as long as the specific intent did not antedate the intoxication.

Syl. Pt. 2, *State v. Keeton*, 166 W. Va. 77, 272 S.E.2d 817 (1980). At the outset, we reject the premise that the petitioner was precluded from introducing evidence of his intoxication at the time of the offense. On cross-examination, the petitioner elicited testimony from Detective Luciano that the petitioner was cited for public intoxication and driven home mere hours before the shootings.[4] Further, Ms. Austin also testified that the petitioner had been drinking and acting erratically on the day in question. The petitioner does not elucidate the additional evidence of intoxication that he was prevented from presenting.

The petitioner also argues that he should have been allowed to introduce "evidence of his intoxication even without an expert opinion as to diminished capacity[.]" We have held that "[t]he diminished capacity defense is available in West Virginia to permit a defendant to introduce *expert* testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged." Syl. Pt. 3, in part, *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003) (emphasis added). Here, the petitioner admits that, before trial, he was evaluated for diminished capacity and criminal responsibility, but "[n]either evaluation provided any expert opinion to be used as a defense in the case." Because the petitioner was unable to procure expert testimony to support his position that he had a diminished capacity, and he fails to explain what evidence of intoxication he was prevented from introducing, we conclude that the circuit court did not abuse its discretion when it denied the petitioner's motion for new trial.[5]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 16, 2025

---

[4] Detective Luciano testified before the traffic stop video was admitted and displayed to the jury.

[5] To the extent that the petitioner argues that he should have been allowed to present evidence of his intoxication under the curative admissibility rule because the State "opened the door" to it by playing the traffic stop video, this argument fails because he does not argue that the video was inadmissible, or that he was denied an opportunity to rebut the video with "similarly inadmissible evidence" on the "same evidentiary fact." *See Guthrie*, 194 W. Va. at 664, 461 S.E.2d at 170, Syl. Pt. 10, in part (describing the elements of the curative admissibility rule).

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison